DONALD F. ZIMMER, JR. (Bar No. 112279)
  *fzimmer@kslaw.com*
WILLIAM E. STEIMLE (Bar No. 203426)
  *wsteimle@kslaw.com*
**KING & SPALDING LLP**
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone:    +1 415 318 1200
Facsimile:    +1 415 318 1300

Attorneys for Defendants
BRISTOL-MYERS SQUIBB COMPANY; ASTRAZENECA
PHARMACEUTICALS LP; AND
MCKESSON CORPORATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPHELIA DUBOSE,<br><br>          Plaintiff,<br><br>     v.<br><br>BRISTOL-MYERS SQUIBB COMPANY;<br>ASTRAZENECA PHARMACEUTICALS<br>LP; and McKESSON CORPORATION<br><br>          Defendants. | Case No. 3:17-cv-00244-JST<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(B)(2)) OR, IN THE ALTERNATIVE, TO TRANSFER (28 U.S.C. § 1404(A))**<br><br>Date:     June 15, 2017<br>Time:     2:00 p.m.<br>Judge:    Hon. Jon S. Tigar<br>Courtroom: 9 |

# I.     INTRODUCTION

This Court lacks specific jurisdiction over Bristol-Myers Squibb Company (BMS) and AstraZeneca Pharmaceuticals LP (AstraZeneca).[1]   Plaintiff does not reside in California and it is undisputed that she was prescribed saxagliptin, ingested it, and suffered her alleged injury outside of California.   Nevertheless, she argues her claim arises from Defendants' contacts with California.   Her arguments fail not only as a matter of law, but as a matter of common sense.

*First*, Plaintiff fails to meaningfully link Defendants' forum contacts to her alleged injury.   Rather, Plaintiff speciously argues that her claim is related to BMS and AstraZeneca clinical trials that were used to seek FDA approval of saxagliptin.   Plaintiff, however, did not participate in <u>any</u> saxagliptin clinical trial, within California or elsewhere, nor did she suffer an injury arising out of any of those clinical trials.   Plaintiff's claims are based on alleged failure to warn about certain purported side effects in the product labeling, not the FDA's decision to approve the drug in the first place.   Plaintiff has advanced no evidence linking her claims to the limited number of clinical trial sites or participants from California.   Plaintiff does not reside in California and it is undisputed that Plaintiff was prescribed saxagliptin, ingested saxagliptin, and suffered her alleged injury outside of California.   Her claims have nothing to do with California or the clinical trials that occurred here.

*Second*, although Plaintiff implies that the clinical trials for saxagliptin only occurred in California, each of the trials she identifies was designed, supervised, and monitored from locations outside of California and involved trial sites across the country and in numerous countries around the world.   Indeed, the evidence upon which Plaintiff relies demonstrates that sites in California accounted for a small fraction — 6.7% — of the clinical trial locations. Clinical trials that occurred all over the country—and the world—cannot support specific jurisdiction in California.   If specific jurisdiction over a non-California plaintiff's claim against out-of-state defendants exists in California merely because the clinical trials included sites in

---

[1]     Plaintiff does not contest that this Court lacks general jurisdiction over BMS and AstraZeneca.

REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER
(Case No. 3:17-cv-00244-JST)

California, then specific jurisdiction would also exist in 40 other states across the country where these trials also were conducted. This would make a mockery of the very concept of "specific" jurisdiction and reinstate the sweeping theory of personal jurisdiction that the Supreme Court rejected in *Daimler* and *Goodyear*.

*Third*, Plaintiff's lengthy description of clinical trials and commercial activity in California involve an issue that is not in dispute: whether Defendants availed themselves of the forum's benefits. Defendants conceded this point for purposes of this motion and challenged only the requirement that Plaintiff's claims "arise out of" Defendants' forum contacts. In discussing this red herring, Plaintiff conflates the "availment" and "arises out of or relates to" prongs of specific jurisdiction and cites case law that predates the *Daimler* and *Goodyear* decisions in an attempt to further blur the lines between them. Her argument that a non-resident defendant is subject to suit by a non-resident Plaintiff whose claims arose out-of-state simply because the defendant does business in the state has been rejected by *Daimler* and its progeny as "exorbitant" and an "unacceptably grasping" view of general jurisdiction. *Daimler AG v. Bauman*, 134 S.Ct. 746, 751 & 760–761 (2014). Adopting Plaintiff's proposed standard here would render *Daimler* and its limitations meaningless because specific jurisdiction would subsume general jurisdiction in every case.[2]

In the alternative, this case should be transferred to the District of South Carolina. Plaintiff's obtaining a prescription for saxagliptin, her alleged injuries, and her treatment for them all occurred outside of California. The balance of factors favors adjudicating Plaintiff's

---

[2]   Plaintiff's reference to the state court decision on Defendants' motion to quash for lack of personal jurisdiction is irrelevant to the determination of this motion. *See* Opp. fn. 2. That order was based on the California Supreme Court's decision in *Bristol-Myers Squibb Company v. Superior Court*, 1 Cal.5th 783 (2016), cert. granted, which the state court was bound to follow. California state court precedent on personal jurisdiction is not binding on this Court, which must follow Ninth Circuit law. As discussed further in Defendants' moving papers (p. 11:8-28), the California Supreme Court ruling in *Bristol-Myers Squibb* not only conflicts with Ninth Circuit law, but it is presently being reviewed by the United States Supreme Court, with a decision expected within 30 days. And, in any event, the state court decision cited by Plaintiff granted Defendants' alternative ground presented here, forum non conveniens, and dismissed the cases.

1   claims in her home state, where case-specific witnesses and documents are located.  Indeed, it is
2   telling that Plaintiff's counsel only tried filing claims in this Court after similar claims they filed
3   in the California Superior Court were dismissed in favor of Plaintiffs' home jurisdictions.

4   It is irrelevant that a small percentage of the Phase III clinical trials Plaintiff identifies
5   included sites in California.  Plaintiff overstates California's role, and suggests that these trials
6   were conducted mostly or exclusively in California, when plainly they were not.  More
7   importantly, they have nothing to do with Plaintiff's claims in this case.  And Plaintiff fails to
8   demonstrate that any relevant evidence is likely to be located in California; indeed, any relevant
9   documents are within BMS' and AstraZeneca's possession, custody, or control in states other
10  than California.

11  Finally, Plaintiff ignores the undue prejudice Defendants will suffer by remaining in
12  California, where they cannot compel key witnesses to trial—e.g. treaters, prescribers, and other
13  fact witnesses.  *See Gulf Oil Corp. v. Gilbert* 330 U.S. 501, 509 *superseded by statute on other*
14  *grounds*, ("[t]o fix the place of trial at a point where litigants cannot compel personal attendance
15  and may be forced to try their cases on deposition, is to create a condition not satisfactory to
16  court, jury or most litigants.").

17  **II.    ARGUMENT**

18  **A.    This Court Lacks Specific Jurisdiction over BMS and AstraZeneca**

19  Specific jurisdiction exists only where the claim "arises out of or relates to the
20  defendant's forum-related activities."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d
21  797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).  To meet
22  this standard, the Ninth Circuit requires plaintiff to show that "but for" the actions of BMS and
23  AstraZeneca in California, she would not have been injured.  *See Menken v. Emm*, 503 F.3d
24  1050, 1058 (9th Cir. 2007).  Because Plaintiff has not alleged and cannot demonstrate that
25  activities by AstraZeneca and BMS in California caused her alleged injury in South Carolina,
26  she has failed to satisfy her burden of establishing facts justifying the exercise of personal
27  jurisdiction.  *See Schwarzenegger*, 374 F.3d at 802.

28

1          **1.     California played a minimal role in saxagliptin clinical trials, and
2                  Plaintiff did not participate in any saxagliptin clinical trials in
                   California**

3          Plaintiff attempts to engineer specific jurisdiction by arguing that her causes of action

4   arise out of Defendants' contacts with California because saxagliptin was "developed" in

5   California prior to receiving FDA approval.  *See* Opp. at p. 2:25–26.  She insinuates that seven

6   Phase III trials were exclusively or predominantly conducted in California.  In fact, Plaintiff's

7   citations to publicly-available information demonstrate that such clinical trials included

8   hundreds of sites in forty-one (41) states and twenty-four (24) countries worldwide, and only a

9   small percentage (6.7%) of sites were located in California:  (See Ex. H to Welling Decl. [135

10  locations, 11 in California]; Ex. I [74 locations, 9 in California]; Ex. I [154 locations, 11 in

11  California]; Ex. K [115 locations, 5 in California]; Ex. L [133 locations, 10 in California]; Ex.

12  M [211 locations, 6 in California]; Ex. N [27 locations, 5 in California].)

13         Moreover, Plaintiff's argument that Defendants developed saxagliptin in California is

14  meritless.  The only support Plaintiff offers for this argument is that a small portion of the

15  above-referenced clinical trial sites were located in California.  Phase III clinical trials involve

16  thousands of patients and thus necessitate that testing be conducted throughout the country (and

17  often, the world) in order to limit sample bias and achieve statistically significant results.  The

18  fact that some patients in clinical trials (who have no relationship to Plaintiff or her injury) were

19  located in California does not mean Defendants developed saxagliptin in California.  It does not

20  even mean Defendants designed the saxagliptin clinical trials in California.  It suggests only that

21  some number of patients and physicians in California participated in the clinical trials program.

22  Plaintiff has presented no evidence that saxagliptin was designed and developed in California,

23  nor can she. AstraZeneca—a Delaware corporation with its principal place of business in

24  Delaware—is listed as the "sponsor" and "responsible party" for each trial plaintiff cites.  *Ibid.*

25  ["Sponsor: AstraZeneca" and "Information provided by (Responsible Party): AstraZeneca"

26  listed on page 1 of Exhs. H–N to Welling Decl.].  BMS is a Delaware corporation with its

27  principal place of business in New York. Plaintiff offers no details or support for her spurious

28
                                                    4

1   argument that two pharmaceutical companies based on the east coast designed and developed

2   Onglyza in California, and she cannot as this did not occur.

3       Finally, to the extent that Plaintiff claims these trials were conducted improperly or that

4   the FDA was not provided with some unspecified information, those claims are precluded under

5   clear Supreme Court precedent.  *See Buckman Co. v. Plaintiffs' Legal Comm'n* 531 U.S. 341,

6   348–349 (2001) (finding that fraud on the FDA claims are preempted by federal law).

7           **2.      Plaintiff's claims do not arise from clinical trials or Defendant's
                      commercial activity within California**
8

9       Regardless of the location of Defendants' clinical trial sites, Plaintiff has not established

10  a meaningful link between those clinical trials and her claims in this lawsuit, which sound in

11  failure to warn.  She was not a patient in a clinical trial (let alone one that took place in

12  California) nor did anything that occurred in a California clinical trial site contribute in any way

13  to her alleged injury.

14      First, Plaintiff provides no evidence nor any authorities for her speculative assertion that

15  the FDA would not have approved Onglyza and Kombiglyze without participation from

16  California patients in clinical trials.  Throughout her opposition, Plaintiff often repeats her claim

17  that "but for" or "without" Defendants' California contacts, the FDA would not have approved

18  Onglyza or Kombiglyze, and Plaintiff would not have ingested it.  *See, e.g.*, Opp. at 2:4-6; 3:25-

19  4:1; 5:21-25; 8:14-16; 9:7-10; 9:19-21; 10:25-11:2.  There is no evidence to support Plaintiff's

20  speculative theory.

21      Second, Plaintiff's claims for relief do not "arise out of" the FDA's approval of the

22  saxagliptin products.  There is no dispute about whether the Defendants should be permitted to

23  continue to sell saxagliptin in the US market, nor could there be under *Buckman*, discussed

24  above. Saxagliptin remains FDA-approved, continues to be prescribed by physicians, and

25  Plaintiff cannot use a personal injury lawsuit to argue that it should not be. *See also Mutual*

26  *Pharmaceutical Co., Inc. v. Bartlett*, 133 S.Ct. 2466, 2477 (2013).  The relief Plaintiff seeks is

27  monetary compensation for personal injuries because of an alleged failure to warn about certain,

28

5

purported side effects in the product labeling, not revocation of saxagliptin's FDA approval. Plaintiff's claims will turn on the information her prescribing doctor knew about saxagliptin and whether different or additional warnings would have resulted in that doctor's prescribing decision. Specifically, Plaintiff alleges that her physicians were unaware of the purported risks of saxagliptin (Compl., ¶ 44) and that they would not have prescribed it or would have warned Plaintiff differently if saxagliptin carried a different warning (Compl., ¶ 43). These claims are wholly unrelated to whether clinical trials that included California sites were part of the basis of FDA's approval of the saxagliptin products. The requisite causal connection between Plaintiff's causes of action and Defendants' activities within California does not exist here because Plaintiff did not participate in any of the clinical trials she describes, and she was not prescribed, did not ingest, and was not injured by saxagliptin in California. Thus, Plaintiff's claim does not relate to Defendants' forum contacts and Plaintiff cannot satisfy the "arising from" prong of specific jurisdiction. *See Walden v. Fiore*, 134 S.Ct. 1115, 1121-22 (2014).

Finally, subjecting Defendants to specific jurisdiction in this case would render *Daimler* and its progeny meaningless. Under Plaintiff's inappropriately relaxed approach to the "arising from" requirement, BMS and AstraZeneca would be subject to specific jurisdiction essentially everywhere on essentially any claim. This universal general jurisdiction approach is precisely the "unacceptably grasping" view of jurisdiction that the Supreme Court in *Daimler* rejected as "exorbitant" and held was "barred by due process constraints on the assertion of adjudicatory authority." *Daimler*, *supra*, 134 S.Ct. at pp. 751 & 760–761. In fact, the Supreme Court recently granted certiorari and is currently reviewing a decision of the California Supreme Court that applied exactly the type of relaxed specific jurisdiction standard asserted by Plaintiff here. *Bristol-Myers Squibb Company v. Superior Court*, Dkt. No. 16-466.

### 3. Plaintiff's arguments that Defendants purposefully availed themselves of the benefits of doing business in California are irrelevant to this motion

Defendants did not dispute Plaintiff's allegations that Defendants availed themselves of the benefits of California and transacted business here. Instead, this motion concerns only the

"arising under" prong of the specific jurisdiction test, not the "purposeful availment" prong. Plaintiff, however, devotes a significant part of her opposition to discussing availment and cites case law that predates the *Daimler* and *Goodyear* decisions in an attempt to further blur the lines between the availment and arising under prongs. Her argument that a non-resident defendant is subject to suit by a non-resident plaintiff whose claims arose out-of-state simply because the defendant does business in the state has been rejected by *Daimler* and its progeny as "exorbitant" and an "unacceptably grasping" view of general jurisdiction. *Daimler AG v. Bauman*, 134 S.Ct. 746, 751 & 760–761 (2014). As discussed above, Plaintiff has not and cannot demonstrate that her claims arise from Defendants' forum contacts. Accordingly, the Court lacks specific jurisdiction over Defendants regardless of whether Defendants are found to have purposefully availed themselves of the benefits of conduction business in California.

### 4. Plaintiff is not entitled to jurisdictional discovery

Plaintiff's request for discovery should be denied, as she seeks information about Defendants' activities in California—i.e., availment, which is undisputed.[3] No facts obtained through discovery can change the facts precluding specific jurisdiction here: Plaintiff does not reside in California, was not prescribed and did not ingest Onglyza in California, and has suffered no injuries in California. Her claims are unrelated to any of Defendants' forum contacts. This is not a close call, and "[a] district court is vested with broad discretion to permit or deny [jurisdictional] discovery." *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).

### B. Transfer of this Case to the District of South Carolina is Appropriate for the Convenience of the Parties, Witnesses, and is In the Interest of Justice

The Court should transfer this case to South Carolina, where key witnesses, including Plaintiff's prescribing physicians, treating doctors, employers, family members, and

---

[3]   Defendants note that counsel for Plaintiff represents other plaintiffs with similar claims against Defendants in various jurisdictions across the country and has had opportunities in these other cases to develop evidence demonstrating that saxagliptin was developed in California.

REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER
(Case No. 3:17-cv-00244-JST)

1  corroborating witnesses are located. All of these witnesses are beyond the subpoena power of

2  this Court and critical to this case. Judge Karnow of the San Francisco Superior Court recently

3  reached precisely this conclusion in granting a forum non conveniens motion of Defendants with

4  respect to other out-of-state plaintiffs claiming injury from saxagliptin who were represented by

5  the same attorneys as Plaintiff here. *See* Dkt. 13-1, p. 3:7-14. Judge Karnow did so after

6  evaluating the forum non conveniens factors under California law that are substantially similar to

7  the Ninth Circuit law discussed in Defendants' moving papers.

8      Just like her counsel's unsuccessful attempt in San Francisco Superior Court, Plaintiff's

9  attempt here to tie her case to California through a small percentage of California testing centers

10  involved in saxagliptin Phase III clinical trials misses the mark. As discussed above, whether the

11  small portion of clinical trials with sites in California affected the FDA's decision to approve

12  saxagliptin—an argument for which Plaintiff offers only speculation—has nothing to do with

13  Plaintiff's claims in this case. Thus, any documents and witnesses related to these clinical trials

14  that may still be in California are wholly unrelated to the claims Plaintiff asserts in this case.

15  The fact that irrelevant evidence may be in this state cannot outweigh the concern that all of the

16  key witnesses reside in Plaintiff's home state or on the East Coast where AstraZeneca and BMS

17  are at home. In reality, this is a textbook case of inappropriate forum shopping, as the only link

18  between Plaintiff's action and California is the fact that her attorney is located here.

19      Plaintiff's argument that "litigating this matter in this district is more expeditious and cost

20  efficient than litigating this matter in multiple other states" falls flat. Opp. at 15:16-17. Plaintiff

21  ignores the fact that she, AstraZeneca, and BMS reside elsewhere. While litigating in California

22  might be more convenient for Plaintiff's *counsel*, that is not a proper ground for denying transfer.

23  *Smith v. Aetna Life Ins. Co.,* Case No. C–11–2559 SI, 2011 WL 3904131, at *2 (N.D. Cal. 2011)

24  ("The convenience of counsel is not considered for purposes of deciding whether a venue is

25  convenient for the purposes of § 1404(a)"), citing *In re Horseshoe Entertainment*, 337 F.3d 429,

26  434 (5th Cir. 2003) ("The factor of 'location of counsel' is irrelevant and improper for

27  consideration in determining the question of the transfer of venue.") In any event, Plaintiff's

28

8

REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER
(Case No. 3:17-cv-00244-JST)

counsel has already filed numerous, similar claims against these same defendants in multiple other jurisdictions where those clients reside.

Moreover, Plaintiff ignores the practical realities of modern litigation, which enable rapid access to documents and permit information sharing across borders. All of the documents produced by Defendants will apply to all of the cases. Plaintiff will engage in the same methods to retrieve Defendants' information regardless of where she tries this case. But both parties will have far *better* access to witnesses and information located in Plaintiff's home states if her claims are tried there.

It also is not necessary for similar claims to be in the same district court for counsel of record to work collaboratively and seek litigation efficiencies. Defendants' counsel can and will still endeavor to coordinate with Plaintiff's counsel on common issues, such as cross-noticing depositions of company witnesses and producing documents of common interest in multiple forums, should numerous cases proceed in different forums. *See, e.g.*, Manual for Complex Litigation, Fourth, § 20.14 (Federal Judicial Center 2004) ["Coordination Between Courts. Even when related cases pending in different districts cannot be transferred to a single district, judges can coordinate proceedings in their respective courts to avoid or minimize duplicative activity and conflicts."]; *see also In re Crest Sensitivity Treatment & Protection Toothpaste Marketing and Sales Practices Litigation* 867 F.Supp.2d 1348 (J.P.M.L. 2012) ["[I]nformal cooperation among counsel and coordination among the involved courts are, in our judgment, preferable to formal centralization. Various mechanisms are available to minimize or eliminate the possibility of duplicative discovery. Notices of deposition can be filed in all related actions; the parties can stipulate that any discovery relevant to more than one action can be used in all those actions; or the involved courts may direct the parties to coordinate their pretrial activities"] (citing *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.* 446 F.Supp. 242, 244 (J.P.M.L. 1978). Defendants have no interest in seeing their employees distracted from important work to sit through multiple depositions.

Finally, Plaintiff fails to explain a proper justification for why this case should be

9

imposed on jurors in the Northern District of California. *See Gulf Oil*, 330 U.S. at 508-509 (case "ought not to be imposed upon the people of a community which has no relation to the litigation."); *see also In re Air Crash Over the Taiwan Straits on May 25, 2002*, 331 F.Supp.2d 1176, 1206 (C.D. Cal. 2004). California jurors should not be required to hear the claims of a non-resident plaintiff with no relationship to California. Indeed, in precisely the same context of claims for injury from saxagliptin brought in California state court by out-of-state plaintiffs represented by the same attorney as Plaintiff here, Judge Karnow of the San Francisco Superior Court held that "California has no interest" in such cases and that it would be "unfair to burden a California court and jury with these cases." Dkt. 13-1, Ex. B, p. 5:15-17. Plaintiff was prescribed saxagliptin in another state, ingested saxagliptin in another state, and was injured in another state. The burden of jury duty is a heavy one "that ought not be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil*, 330 U.S. at 509.

## III.    CONCLUSION

The motion to dismiss should be granted, and Plaintiff's claims against BMS and AstraZeneca should be dismissed for lack of personal jurisdiction. In the alternative, this case should be transferred to the District of South Carolina where Plaintiff resides.


DATED:  May 15, 2017                          KING & SPALDING LLP



                                              By: /s/ William E. Steimle
                                                  DONALD F. ZIMMER, JR.
                                                  WILLIAM E. STEIMLE

                                              Attorneys for Defendants
                                              BRISTOL-MYERS SQUIBB COMPANY;
                                              ASTRAZENECA PHARMACEUTICALS
                                              LP; AND MCKESSON CORPORATION

REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER
(Case No. 3:17-cv-00244-JST)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned counsel for Defendants BRISTOL-MYERS SQUIBB COMPANY; ASTRAZENECA PHARMACEUTICALS LP; and MCKESSON CORPORATION, hereby certifies that a true and correct copy of the foregoing document was filed with the Court and served electronically through the CM-ECF (electronic case filing) system to all counsel of record to those registered to receive a Notice of Electronic Filing for this case on May 15, 2017.

/s/ William E. Steimle
WILLIAM E. STEIMLE

Attorney for Defendants
BRISTOL-MYERS SQUIBB COMPANY;
ASTRAZENECA PHARMACEUTICALS LP;
and MCKESSON CORPORATION

11

REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER
(Case No. 3:17-cv-00244-JST)